UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:09-CR-00002-1-JRG-DHI |
| | ) | |
| ALBERTO CAMPOS | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) [Doc. 672], as supplemented [Docs. 674, 720, 726, 729]. The United States filed a motion in opposition [Doc. 673], as supplemented [Doc. 724, 725].

Also before the Court are Defendant's motion for leave to file a document under seal [Doc. 721], motion for status review [Doc. 677], pro se motion for release to home confinement [Doc. 670], and pro se motion to appoint counsel [Doc. 650].

**I. BACKGROUND**

On October 27, 2011, Defendant was sentenced to 262 months of imprisonment based on his convictions for conspiracy to distribute and possession with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846 and § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B) and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2) [Doc. 465]. He was sentenced as a career offender based on his instant conspiracy conviction and prior convictions for possession of cocaine base for resale and threatening a witness or victim [*See* Presentence Report, at ¶ 78, 98, 100].

Defendant filed his first motion for compassionate release [Doc. 666] in May of 2020. In the motion, he requested a sentence reduction based on his health conditions amid the COVID-19 pandemic and his rehabilitative efforts [*Id.*]. The Court denied the motion because it found that Defendant had not fully exhausted his administrative remedies with the Bureau of Prisons ("BOP") [Doc. 669].[1]

In his second motion for compassionate release, which is now before the Court, Defendant seeks a sentence reduction based on his health conditions amid the COVID-19 pandemic [Doc. 672, at 1, 12], rehabilitative efforts [Doc. 729-1, at 3], changes in sentencing law [Doc. 720, at 1]. Defendant is presently housed at Federal Correctional Institution Butner Low at the Butner Federal Correctional Complex. *See* Inmate Locator, Bureau of Prisons, https//www.bop.gov.inmateloc/ (Search by register number 21259-074) (last visited March 1, 2022). His projected release date is September 5, 2027.

## II. LEGAL STANDARD

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Section 3582(c)(1)(A)(i) of Title 18, United States Code authorizes district courts to consider defendant motions for sentence reduction based on "extraordinary and compelling reasons."

Before seeking compassionate release from the court, a defendant must first "exhaust the

---

[1] The Sixth Circuit has now clarified that an inmate whose compassionate release request has been denied by the warden may seek judicial review without fully exhausting administrative remedies. *United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020).

BOP's administrative process" or wait "thirty days after the warden has received the compassionate release request—whichever is earlier." *United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). Exhaustion of administrative remedies is a "mandatory condition" for defendant-filed motions for compassionate release. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). However, because the administrative exhaustion requirement operates as a "claim processing rule," it may be waived or forfeited by the Government. *Id*. at 833–34.

If the exhaustion requirement has been met, a court may grant a motion for compassionate release if (1) "extraordinary and compelling reasons merit a sentence reduction," (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the court has "considered the factors . . . in 18 U.S.C. § 3553(a), to the extent that they apply." § 3582(c)(1)(A). However, when the defendant, rather than the BOP, files a motion for compassionate release, the court "may skip step two of the [Section] 3583(c)(1)(A) inquiry" and has "full discretion to define 'extraordinary and compelling circumstances' without consulting the policy statement in [U.S.S.G.] § 1B1.13.'" *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020). A motion for compassionate release may be denied when one of the substantive requirements is not met. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

III. ANALYSIS

A. Exhaustion

Defendant filed a request to be considered for compassionate release with the BOP on April 1, 2020, and his request was denied on April 13, 2020 [Doc. 672-1, at 1–2]. Thus, the Court finds that it has authority under § 3582(c)(1)(A) to address the merits of Defendant's motion.[2]

---

[2] The Government observes that Defendant has not presented his argument regarding changes in sentencing law to the BOP [Doc. 724, at 1]. However, the Government does not expressly object to the Court's consideration of the change in law argument and in the interests of judicial economy, the Court will consider the argument.

### B. Merits

#### 1. Extraordinary and Compelling Reasons

As mentioned above, Defendant seeks compassionate release based upon his medical conditions amid the COVID-19 pandemic [Doc. 672, at 1, 12]. He asserts that he suffers from "congestive heart failure, coronary atherosclerosis, and chronic kidney disease" among other conditions [Doc. 672, at 1, 12].

The BOP reports that Defendant's correctional facility currently has six confirmed cases of COVID-19 among the inmate population and eight confirmed cases among staff. *COVID-19: Coronavirus*, Bureau of Prisons, https://www.bop.gov/ coronavirus/ (last visited March 1, 2022). These numbers are not insignificant. However, they are not extraordinary, especially in light of the prevalence of COVID-19 in the general population. Because COVID-19 poses a danger to people everywhere, the pandemic alone cannot justify compassionate release. *See, e.g.*, *United States v. Shah*, No. 16-20457, 2020 U.S. Dist. LEXIS 73313, at *4–5, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Additionally, at Defendant's correctional complex, 1152 staff and 3254 inmates have been fully vaccinated. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited March 1, 2022). Defendant is fully vaccinated [Doc. 725, at 83, 95–96]. He received his first dose of the COVID-19 vaccine on February 18, 2021, and his second dose on March 10, 2021 [*Id.*].

Defendant is sixty years old and medical records confirm that he suffers from coronary atherosclerosis and "hypertension, benign essential" among other conditions [*See* Doc. 725, at 1, 71–74]. Coronary atherosclerosis "can" increase the risk of severe illness from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 1, 2022). The same is "possibly" true for hypertension. *Id*. The medical records before the Court, which were generated in September of 2021, do not show that Defendant currently suffers from congestive heart failure and chronic kidney disease.

While Defendant's conditions may increase his risk of serious complications from COVID-19, he has not claimed that his conditions are inadequately treated. Also, as mentioned above, Defendant is fully vaccinated. A defendant's "access to the COVID-19 vaccine substantially undermines his request for a sentence reduction" because "with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). "[T]o the extent prisons do offer some unique challenges" such as social distancing, "the vaccine now significantly reduces the risks associated with COVID-19." *Id*. Accordingly, the Court finds that Defendant's health conditions do not qualify as an extraordinary and compelling reason for his release.

Defendant also cites his rehabilitative efforts as a basis for relief. Defendant says that he has made "tremendous progress" and has passed all of his drug and alcohol tests [Doc. 729-1, at 3]. In addition, he has become a group leader of the Santeria religion at his prison and has not had any incident reports [*Id.*]. While the Court considers disciplinary records and rehabilitative efforts to be highly relevant to a discussion of the § 3553(a) factors, the Court does not find those facts sufficient to constitute "extraordinary and compelling" grounds for compassionate release.

5

Congress has provided that, in the context of 18 U.S.C. § 3582(c)(1)(A), "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release. 28 U.S.C. § 994(t).

Last, Defendant argues that the decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam) constitutes an extraordinary and compelling circumstance warranting release because if he were sentenced today, he would not be subject to a career offender guidelines range [Doc. 720, at 1]. The Government concedes that Defendant's instant offense for conspiracy to distribute cocaine would not qualify him for career offender status today [Doc. 724, at 12]. However, to date, the Supreme Court has not made the holding in *Havis* retroactive to cases on collateral review. *See In re Conzelmann*, 872 F.3d 375, 377 (6th Cir. 2017) ("[A] new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive.").

A nonretroactive change in the law cannot, by itself, constitute extraordinary and compelling circumstances. *See, e.g. United States v. Wills*, 997 F.3d 685 (6th Cir. 2021) (no extraordinary and compelling circumstances where defendant argued that if he were sentenced today, his sentencing enhancement would be obviated by the First Step Act of 2018[3]). The Sixth Circuit is currently divided regarding whether a nonretroactive change in the law may be considered extraordinary and compelling in combination with other factors. *United States v. McCall*, 2021 U.S. App. LEXIS 37351 at *17 (December 17, 2021) ("[A] court may consider a nonretroactive change in the law as one of several factors forming extraordinary and compelling circumstances."); *United States v. Hunter*, 12 F. 4th 555, 564 (6th Cir. 2021) (holding that "nonretroactive changes in the law, whether alone or in combination with other personal factors

---

[3] Pub. L. No. 115-391, 132 Stat. 5194.

are not 'extraordinary and compelling reasons' for a sentence reduction"). The Court of Appeals's most recent decision on the issue indicates that the answer to this question is no. *See United States v. McKinnie*, No. 21-3608, 2022 U.S. App. LEXIS 2418, at *10 (6th Cir. Jan. 26, 2022) (nonretroactive changes in the law, and specifically *Havis*, cannot be considered at all when court reviews extraordinary and compelling circumstances).

Even if Defendant's *Havis* argument could be considered here in combination with other factors, the Court does not find that Defendant's circumstances rise to the level of extraordinary and compelling. In any case, the 18 U.S.C. § 3553(a) factors militate against his release.

### 2. 18 U.S.C. § 3553(a) Factors

Under 18 U.S.C. § 3553(a), the Court considers the following factors in determining the sentence to be imposed:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
. . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; . . .

First, the Court considers the conduct underlying Defendant's offense. As detailed in his plea agreement, Defendant admitted to engaging in a large-scale cocaine distribution operation from October 2006 to January 2009 [Doc. 179, ¶ 4]. During that time, he distributed between 3.5

and 5 kilograms of cocaine to his co-defendants and customers [*Id.*] Also, despite the fact that he was a convicted felon prohibited from possessing a gun, Defendant sold an undercover agent an SKS assault rifle and ammunition [*Id.*]. The Court finds that Defendant's offense was serious, especially in light of Defendant's leadership role in the drug conspiracy, the volume of drugs he trafficked, and the lengthy period of time during which he engaged in this criminal activity.[4] The severity of the offense emphasizes the need for adequate deterrence, just punishment, and protection of the public from future offenses by the defendant.

Defendant's criminal history also weighs against release. As mentioned above, he was convicted of threatening a witness/victim and possession of cocaine for resale, which resulted in his classification as a career offender at the time of sentencing [Presentence Report ("PSR") ¶¶ 98–100]. His past record also includes six petty theft convictions, two trespasses, a DUI, assault, domestic battery, giving false information to a peace officer, obstructing a public officer, and an open container [*Id.* ¶¶ 84–97, 101].

When reviewing the § 3553(a) factors, this Court may consider the amount of time that a defendant has served on a sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). In this case, Defendant was sentenced to a total term of imprisonment of 262 months and his projected release date is September 5, 2027, approximately 66 months from now. Defendant has now been incarcerated

---

[4] In addition, at Defendant's sentencing, the Government presented evidence that Defendant attempted to arrange the murder of a co-defendant who had informed against him in exchange for $20,000 [Doc. 468, at 11–16, 25-26]. Defendant denies this accusation [Doc. 674].

8

Case 2:09-cr-00002-JRG-DHI   Document 730   Filed 03/08/22   Page 8 of 10   PageID #: 5321

for a lengthy period of time. However, the Court finds that the substantial period of time remaining on his sentence weighs against compassionate release.

The Court acknowledges that Defendant's rehabilitative efforts weigh in his favor. In particular, the Court commends Defendant for his excellent disciplinary record. The sentencing disparity produced by *Havis* is arguably another point in Defendant's favor here, as well as the letter written by Defendant's wife on his behalf [*See* Doc. 671]. However, these factors are still outweighed by the other relevant sentencing factors.

After considering the applicable § 3353(a) factors and all evidence of record, the Court finds that the § 3353(a) factors weigh against granting compassionate release. A sentence reduction in this case would not reflect the seriousness of the offenses of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant.

### III. OTHER MOTIONS

Defendant filed two additional motions [Docs. 677, 721] in connection with his motion for compassionate release. The Court has reviewed Defendant's proposed sealed document [Doc. 722], and for good cause shown, the Court will grant Defendant's motion to file a document under seal [Doc. 721]. Defendant's motion for status review [Doc. 677] will be denied as moot.

Defendant also filed a pro se motion for release to home confinement [Doc. 670] due to his medical conditions amid the COVID-19 pandemic. To the extent that Defendant intended this motion as a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), his motion is denied for reasons already discussed. To the extent Defendant may be asking the Court to place him on home confinement pursuant to the CARES Act[5], the Court lacks authority to do so because

---

[5] Pub. L. 116–136, 134 Stat. 281 (2020).

the CARES Act empowered the Bureau of Prisons ("BOP"), not the Court, to extend an inmate's length of time on home confinement. Therefore, the motion [Doc. 670] will be denied.

Last, the Court addresses Defendant's pro se motion to appoint counsel [Doc. 650] to "represent [his] case in the Davis decision of the Supreme Court." While Defendant does not specify which Davis decision he is referring to, he may be referencing the Supreme Court decision *United States v. Davis*, 139 S. Ct. 2319 (2019), which concerned the mandatory penalties pursuant to 18 U.S.C. § 924 (c). This *Davis* decision does not apply to Defendant's case because he was not convicted under that code section. In any case, Defendant does not have a right to appointment of counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 107 S. Ct. 1990 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). Defendant has not provided a basis for appointment of an attorney, and the Court declines to appoint one at this time.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for compassionate release [Doc. 672], pro se motion to appoint counsel [Doc. 650], and pro se motion for release to home confinement [Doc. 670] are all **DENIED**. His motion for status review [Doc. 677] is **DENIED AS MOOT**. Defendant's motion for leave to file document under seal [Doc. 721] is **GRANTED**.

So ordered.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE